PEARL RIVER TUNG Co., et al. *v.* ESTATE OF LESLIE JOHN, DECEASED

No. 39768        November 7, 1955        83 So. 2d 95

H. H. Parker, Poplarville, for appellants.

*William H. Stewart,* Poplarville, for appellee.

ROBERDS, P. J.

Leslie John died as a result of a heart attack on February 18, 1953, while engaged in his duties as a servant of Pearl River Tung Company. Irene John, his widow, filed this claim under the Mississippi Workmen's Compensation Law. The claim was allowed by the attorney-referee, the full Commission and the trial judge. Pearl River Tung Company, the employer, and New Amsterdam Casualty Company, its insurance carrier, appeal to this Court.

■ ■ Appellants first say the employer was given no notice of the injury within thirty days after it occurred as required by Section 6998-18 Vol. 5-A, Miss. Code 1942, Recompiled, and for that reason no liability exists against the employer. There are two answers to that contention. First, the stated section provides: "No claim for compensation shall be maintained unless within thirty (30) days after the occurrence of the injury actual notice was received by the employer, or by an officer, manager or designated representative of an employer. If no representative has been designated by posters placed in one or more conspicuous places, then notice received by any superior shall be sufficient. Absence of notice shall not bar recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee's failure to give notice * * *". No representative had been designated by the employer to receive notice. However, the foreman in charge of the labor, including John, was present when John had his attack. This foreman placed John in a motor vehicle and himself drove the vehicle in an effort to get John to the hospital. John died before reaching the hospital. Therefore, the employer had actual knowledge of the injury as provided in the foregoing section. ■ ■ The second answer to the contention is that there is no showing whatever that the

employer was prejudiced by failure of claimant to give notice in the manner contemplated by the statute. Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234, 64 So. 2d 645; Pepper v. Mrs. Ed Barrett, decided October 3, 1955, No. 39,711.

Appellants further say that counsel for claimant in propounding hypothetical questions to the doctors, assumed facts which were unsupported by testimony. We have diligently examined the testimony and are of the opinion that there was evidence to support the assumed facts embodied in the hypothetical questions. And, in addition to that, a careful search does not disclose that appellants objected to any of the hypothetical questions when they were propounded. The contention under consideration is not well taken.

Appellants next say the proof does not support the claim for compensation. The day John died was the first day he had worked for this employer. Appellants say the proof is undisputed that he then had a pre-existing heart trouble and that he died from that trouble. On the other hand, claimant invokes the rule set out in Cowart v. Pearl River Tung Company, 218 Miss. 472, 67 So. 2d 356, quoted from Larson on Workmen's Compensation Law, as follows:

"Pre-existing disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." Again in the Cowart case, this Court quoted the rule set out in Peoria R. Terminal Company v. Industrial Board, 279 Ill. 352, 116 N. E. 651, in these words:

"Even where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident * * *". See also Avery Body Works v. Hall, 224 Miss. 51, 79 So. 2d 453.

The evidence discloses that John had been under the treatment of a doctor for a heart ailment about a year. The doctor did not regard his condition as severe or immediately dangerous. His doctor testified "His heart was slightly enlarged and he had what we call grade 1 or 2 systolic murmur." He said John, in his opinion, had had a "mild attack." John had been driving a truck. Part of the time he had transported workmen to and from the tung oil fields of appellant Tung Company. On the day of his death he had started working for appellant Tung Company gathering tung nuts. He was what was called a "sacker". The nuts were gathered from the ground by pickers and placed in hampers or baskets. These weighed some twenty-five to thirty pounds. The sacker came behind the pickers. He was furnished sacks. He lifted the hampers from the ground and poured the nuts from the hampers into sacks; then closed and tied the neck of the sacks, and hung the sacks onto the nut trees for the nuts in the sacks to dry. The pouring of the nuts from the hampers into sacks and lifting the sacks into the trees where they were fastened to the limbs to dry required considerable exertion. A sacker, according to testimony, usually sacked for five or six pickers. There is evidence here that John was sacking for thirteen pickers. He had told the pickers to slow down; that they were driving him too fast. He started to work at seven o'clock in the morning and he was heard to say at twelve o'clock, when worked ceased for lunch, that up to that time he had sacked three hundred sacks. This accident happened on February 18, 1953. It is in evidence that when he became ill about 1:15, after work had been resumed, he was drenched in perspiration, and underwent a violent vomiting attack. He expired in about four minutes. Dr. L. O. Stewart, John's physician, had told him "to take it easy." He was asked if the over-exertion of John in performing the "sacking" work produced the heart attack and his death, and he replied

"It is most probable that the work caused his heart attack." Again he said "It most likely did."

■■ This evidence, and other uncited supporting testimony in this record, brings this case, we think, within the above-quoted rule — at least there was ample evidence to support the findings of the lower tribunals to that effect.

Affirmed.

*Hall, Holmes, Ethridge* and *Gillespie, JJ.,* concuring.