POPE COMPANY, INC., et al. *v.* WELLS

No. 40377 February 4, 1957 92 So. 2d 370

*M. M. Roberts,* Hattiesburg, for appellants.

*John D. Kervin, Jr.,* Collins, for appellee.

HALL, J.

This is a workmen's compensation case. The appellee was employed by the appellant, Pope Company, Inc., as a salesman in its grocery department, but he was also required to perform such other duties as the company might require of him. According to his testimony and that of Leonard Ashley appellee was directed to go to the company's warehouse and assist Ashley in loading one hundred sacks of cement and to deliver the same to Thyer Manufacturing Company which was engaged in the manufacture of prefabricated homes and which used cement in the making of concrete for the floors of the homes. The appellee said that this occurred on or about October 15, 1954; that it was a hot day and he was sweating profusely; that some of the bags of cement were torn and that he got cement on his legs, arms and neck, which stuck to him; that this caused a burning and stinging sensation in about two hours; that he did not stop work but continued in his employment until March 14, 1955, with the exception of two trips to see a doctor in Laurel who gave him treatment for the rash on one of his legs.

On March 14, 1955, the trouble on his leg had developed into an open sore and he went to a doctor in Collins, where he resided, who found him totally disabled and who testified that he prescribed bed rest and a heal-

ing ointment and an antibiotic ointment applied with Ace bandages. This doctor testified that the ulcer on appellee's leg gave the appearance of being caused by a contact irritant and it was his opinion that the trouble was probably caused from the contact with cement. He said that such an ulcer would be slow in development.

Appellee testified that he reported the trouble to Mr. John B. Pope, President of Pope Company, Inc., on February 15, 1955, but Mr. Pope testified that it was reported to him about March 14th, and said that so far as he remembered it was on the day that appellee quit work. Mr. Pope reported the matter to the insurance carrier on March 22, 1955. He said that he remembered the occasion when the appellee and Mr. Ashley moved the one hundred bags of cement to the Thyer Manufacturing Company but that he did not remember the date. He and his brother who was secretary and treasurer of the company both testified that they could not find any record of the one hundred bags of cement, but he did testify that he found a record of forty-five sacks sold to Thyer on July 5, 1954, twenty-five sacks on July 14th, and six sacks on July 13th. His brother testified to the same sales but placed the sale of the six sacks on July 15th. All of the records of Thyer Manufacturing Company had been sent to the home office in Toledo, Ohio, and an accountant for that company testified by deposition that he had a record of only six sacks in July and that this was on July 15, 1954. The Pope brothers testified that they found no record of any sales of cement to Thyer in September or October 1954, but the accountant for Thyer testified by deposition that his record showed the purchas of one sack in September and two in October. He also testified that his records would not indicate whether any exchange or loan of cement took place between Pope Company, Inc., and Thyer at any time.

At the conclusion of the hearing the attorney-referee found as a fact that appellee was an employee of Pope

Company, Inc. at an average weekly wage of $23.08 "on or about October 1954"; that on or about said date claimant was exposed to cement dust on and about his legs and body and that such exposure was in the scope and course of his employment; that said cement dust aggravated an existing chronic eczema which resulted in nummular ulcer to claimant's right leg which became apparent on or about December 31, 1954, and that such condition was reported to the employer on or about March 15, 1955; that claimant was temporarily and totally disabled from March 15, 1955, through July 31, 1955, and that on the latter date claimant had attained maximum medical recovery and suffered no further temporary or permanent disability; that claimant did not request medical, surgical or other attendance or treatment of the employer prior to March 15, 1955; that the claimant did not notify his employer of the injury within thirty days after the same became apparent as required by Section 12 of the Mississippi Workmen's Compensation Act, as amended. The order of the attorney-referee denied and dismissed the claim.

On appeal to the full Commission two members voted to affirm the order of the attorney-referee and one member filed a strong dissenting opinion. On appeal from that order the circuit judge disagreed with the attorney-referee and the two members of the Commission on the ground that they were in error in applying Section 12 of the Mississippi Workmen's Compensation Act and held that the notice to the employer was given in time, and accordingly there was a reversal of the attorney-referee and of the two members of the Commission who affirmed the same, and a judgment was entered awarding to the claimant two-thirds of his average weekly wage, or the sum of $15.39 per week for the period from March 15, 1955, to and including July 31, 1955, together with costs of medical and surgical treatment from March 14, 1955, to and including July 31, 1955. From that judgment of

the circuit court, the employer and its insurance carrier appeal here.

Section 12 of the Compensation Act is found as Section 6998-18, of the Recompiled Volume 5A of the Code of 1942, which provides for actual notice to the employer within thirty days after the occurence of the injury. That section further provides that the absence of notice shall not bar a recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee's failure to give notice. In the case of Pearl River Tung Company, et al. v. Estate of Leslie John, 83 So. 2d 95, not yet reported in the Mississippi Reports, we had occasion to deal with Section 12 of the Act, in a case where no notice was given and we there said that "there is no showing whatever that the employer was prejudiced by failure of claimant to give notice in the manner contemplated by the statute." We there cited the case of Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234, 60 So. 2d 645, and Pepper v. Barrett, 82 So. 2d 580.

██ ██ In this case the employee did not become disabled until March 14, 1955, and he immediately gave notice to the employer. We do not think that the failure to give notice before March 15, 1955, as found by the attorney-referee, resulted in any prejudice whatsoever to the appellant.

██ ██ Moreover, we do not think that notice was required until there was a disability where the injury is progressive and cannot with reasonable certainty be recognized at first as compensable. In this case the claimant continued with his work until he became totally disabled and saw Dr. Smith on March 14, 1955. We had occasion to deal with this question in Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234 (248), 60 So. 2d 645, where we quoted from American Jurisprudence and also Larson and stated our views as follows: " 'Failure to make claim upon an employer for compensation within

the prescribed period is not a defense if the accidental injury is latent and progressive and cannot with reasonable certainty be recognized at first as compensable. In such case, however, claim must be made within the statutory period from the time the employee acquires knowledge of a compensable disability as a result of the accident.' 58 Am. Jur., Workmen's Compensation, Sec. 382, p. 831. This view is further supported by a recent text documented with numerous cases: 'Except under statutes expressly dating the limitations period from the "accident", the time for notice or claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease . . . Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.' Larson's Workmen's Compensation Law, Sec. 78.41, pgs. 260-261." In Port Gibson Veneer and Box Company v. Brown, 83 So. 2d. 757, not yet reported in the State Reports, we stated "The law looks with disfavor on strained and techincal interpretations of statutes regarding notice of injury; * * *"

We are also of the opinion that the case of Hardin's Bakeries, et al. v. Ranager, 217 Miss. 463, 64 So. 2d 705, in some of its aspects, is particularly applicable to the case at bar; and also the case of Christopher v. City Grill, et al., 218 Miss. 638, 67 So. 2d 694.

From what we have said it follows that the judgment of the circuit court should be, and the same is hereby, affirmed.

Affirmed.

*Roberds, Lee, Holmes* and *Ethridge,* JJ., concur.